ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MAYA KARWANDE (CABN 295554)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    Maya.karwande@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FILIMONE TAVAKE, <br><br> Defendant. | CASE NO. 3:24-MJ-70463 <br><br> **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** <br><br> Date: March 28, 2024 <br> Time: 10:30 AM <br> Court: Hon. Laurel Beeler |

## I. INTRODUCTION

On March 22, 2024, the defendant Filimone Tavake, was arrested for the March 27, 2021, murder of M.M. (hereinafter "victim") in Aiea, Hawaii. The Federal Bureau of Investigation (FBI) along with the Honolulu Police Department have been investigating the victim's murder. During the course of the investigation, it was learned that Tavake was providing the victim methamphetamine for the victim to sell. Investigators located approximately eight (8) pounds of suspected methamphetamine at the victim's residence. A portion of the suspected methamphetamine was submitted for analysis and tested positive for 452.7 grams of methamphetamine. A pound of methamphetamine sells for approximately $4,500 to $5,500 in Hawaii, accordingly the amount of methamphetamine recovered from the victim's residence would be valued at approximately $36,000 to $44,000.  Tavake murdered the victim after the victim failed to timely pay Tavake for methamphetamine Tavake provided to the victim.

Tavake was indicted by a grand jury sitting in the District of Hawaii with  violations of  18 U.S.C. §§ 924(c)(1)(A) and 2, Carry, Use and Discharge of a Firearm During and in Relation to a Drug Trafficking Crime, aiding and abetting; 18 U.S.C. §§924(j)(1) and 2, Causing the Death of a Person Through the Use of a Firearm, aiding and abetting; 21 U.S.C. 848(e)(1)(A) Killing While Engaged in Offenses Punishable under Title 21 U.S.C. § 841(b)(1)(A); and 21 U.S.C. §§846, 841(a)(1), (b)(1)(A), Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, which carries a maximum term of imprisonment of more than ten years under the Controlled Substances Act.  Under the Bail Reform Act, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance as required and the safety of the community.  *See* 18 U.S.C. §3142(e)(3)(A) and (B).  As described below, Tavake is unable to overcome this presumption.  Tavake poses a significant danger to the community and is a risk of flight.

## II. LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

1  A finding that a defendant is a danger to the community must be supported by clear and convincing
2  evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the
3  evidence. *Id.*

4  "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated
5  in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).
6  Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence
7  against the defendant; (iii) the history and characteristics of the defendant, including the defendant's
8  character, physical and mental condition, family and community ties, past conduct, history relating to
9  drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well
10 as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature
11 and seriousness of the danger to any person or to the community that would be posed by the defendant's
12 release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

13 The rules of evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). It is well-
14 settled that at a detention hearing, the government may present evidence by way of an evidentiary
15 proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the
16 evidence against the defendant, and other relevant factors. *See, e.g., United States v. Salerno*, 481 U.S.
17 739, 743 (1987).

18 When the case involves an offense for which a maximum term of imprisonment for ten years or
19 more is prescribed in the Controlled Substances Act or an offense under 18 U.S.C. § 924(c), there is a
20 rebuttable presumption that no condition or combination of conditions will reasonably assure the
21 defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A) and
22 (B). Under this scheme, the burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d
23 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, the presumption is not erased;
24 instead, it remains in the case as an evidentiary finding militating against release that is to be weighted
25 along with other relevant factors. *See id.* (citation omitted).

26 **III.    ARGUMENT**

27     **A.    Nature and circumstances of the victim's murder support detaining Tavake.**

28 The victim was shot and killed while he was in the carport outside of his home. The victim's

family members who were inside heard the gunshots, observed the victim shot, and called 911 at 9:44 pm H.T. Investigators obtained surveillance video from residences near the victim's home. Beginning at approximately 9:11 pm H.T., the surveillance video shows a vehicle with no license plates driving around in the area near the victim's home. Subsequently, the vehicle parks and two males are observed walking in the direction of the street where the victim's residence is. A few minutes later, at approximately 9:41 pm H.T., gun shots are heard, and the same two males are seen running from the direction of the victim's residence toward the vehicle.

When reviewing communications on the victim's cell phones, investigators observed numerous calls and text messages with numbers that were eventually linked to Tavake. These messages were consistent with drug distribution and included threats to the victim if the victim did not pay money that was owed for narcotics that had been provided. On March 9, 2021, Tavake wrote the following text messages to the victim:

- 2:35 p.m. H.T. – Toko try and see if he can finish by Thursday
- 2:36 p.m. H.T. – So I can go get new material for job site
- 3:15 p.m. H.T. – Theyre gettin to the no talking part because you say one thing and it don't meet deadline
- 3:16 p.m. H.T. – I warned you toko that there [sic] getting fed up with story
- 5:39 p.m. H.T. – Try and get something today

On March 10, 2021 Tavake sent a message to the victim stating "[y]ou need to figure something out ASAP." The victim responded "Fuck." On March 12, 2021, the victim sent Tavake a message stating "my bad toko ta mai." On March 17, 2021, Tavake sent a message to the victim stating "Toko see u after to get tola." On March 22, 2021, Tavake sent the victim a message stating "[s]ee if he can have 2500 so I can go hm," and the victim responded "I got 2." On March 23, 2021, Tavake sent the victim the following messages stating "Toko see if you can get more before I go I'll come grab it tomorrow" and "[a]nd leave the other stuff with you." On March 25, 2021, Tavake sent the victim a message stating "[n]evermind toko just switched it Saturday see u tomorrow to drop off ND pick up whatever you have before I go." On March 26, 2021, Tavake sent the victim a message stating "I'ma come drop the stuff."

On March 27, 2021, between 7:56 pm H.T and 8:26 p.m. H.T., Tavake called the victim six times, but none of those calls were answered. During this stretch, at 8:13 p.m. H.T., the victim sent an instant message to Tavake stating, "my bad was working." At approximately 8:28 pm H.T., the victim answered an incoming call from Tavake, which lasted approximately 23 seconds. At approximately 9:39 pm H.T., about five minutes before the victim was shot and killed, the victim answered an incoming call from Tavake, which lasted approximately five seconds.

Investigators interviewed a witness who identified Tavake as a person who was providing methamphetamine to the victim for the victim to sell. This witness stated they had met Tavake on several occasions at the victim's house. The last time the witness saw Tavake was at the victim's house about a week before the victim was shot and killed.

Investigators identified a phone number that was for an OnStar account connected to a white 2019 Chevrolet Equinox owned by Hertz Rental Car. The 2019 Chevrolet Equinox was consistent with the vehicle observed in the surveillance video. The 2019 Chevrolet Equinox was rented on March 17, 2021, by a known associate of Tavake's. The vehicle was returned on March 27, 2021, approximately 27 minutes after the homicide. The vehicle had an infotainment system that Tavake's phone connected to on March 17, 2021.

Investigators obtained and executed search warrants for phone records to include cell tower location information for Tavake's phones and the OnStar vehicle phone number. The records received showed that Tavake's phone and the OnStar vehicle phone number were communicating with the cellular tower closest to the victim's residence at the time of the homicide.

On March 28, 2021, one day after the victim's homicide, Tavake travelled from Honolulu to San Francisco on United Airlines. Tavake's ticket to San Francisco was purchased by a third party who is a known associate of Tavake's on March 28, 2021, at 7:27 pm H.T. Investigators spoke with a witness who advised that they knew Tavake to deal in narcotics. This witness stated that they would obtain narcotics to sell from Tavake and often pay Tavake by sending cash through a money transfer service such as Western Union. The witness advised that Tavake has individuals that are able to assist him in transporting drugs into Hawaii on airplanes. The witness stated that they were aware that around the time of the victim's homicide there were individuals in Oahu who owed Tavake money for drugs that

had been provided for sale. The witness advised that around the time of the homicide they had observed Tavake to frequently be in possession of two 9mm firearms. Toolmarks examination conducted in this investigation showed that at least two guns were used in the victim's murder and one of those guns was a 9mm.

The victim was shot multiple times as he was standing outside him home. Tavake's actions placed countless others at risk. The victim's home is located in a densely populated residential area putting bystanders at risk of being struck by a stray bullet. The victim's family members, to include his wife and small children, were at home when Tavake committed this shooting. One projectile went through a window of the victim's home into a room that the victim's brother-in-law was in.

Tavake committed this murder in relation to his distribution of methamphetamine, a potent and highly addictive narcotic that is tied to significant mental health effects, including short and long term psychosis. The dangerous and violent nature of the offenses that Tavake is charged with compel detention.

**B.  Tavake Cannot Overcome the Presumption that He Is a Danger to the Community.**

The violent nature of these offenses alone support detention. However, this incident is not the first incidence of violence that Tavake has committed. In 2009, Tavake was convicted of Battery with serious bodily injury in California. Additionally, FBI and DEA agents conducted a control buy operation in November and December of 2022 during which a confidential human source (CHS) purchased methamphetamine from Tavake[1]. Tavake continued to travel to Hawaii on a frequent basis with his last documented trip to Hawaii occurring on December 17, 2023. Tavake's prior battery with serious bodily injury conviction, his repeated and continued involvement in the distribution of methamphetamine, and murdering of the victim prevent him from overcoming the presumption that he is a danger to the community.

---

[1] During the course of this operation recorded phone calls were made with the CHS and Tavake during which arrangements were made for the CHS to purchase methamphetamine from Tavake. Additionally, agents observed Tavake arrive at the location agreed to for the methamphetamine sale and the CHS had methamphetamine after meeting with Tavake. However, the CHS inadvertently failed to record the buy. Investigators also obtained recorded calls and text messages from Tavake demanding payment for additional methamphetamine that was fronted to the CHS. One on occasion the CHS obtained methamphetamine from Tavake without prior authorization from investigators.

UNITED STATES' DETENTION MEMO                     6
3:24-MJ-70463

**C.    Tavake Cannot Overcome the Presumption that He is a Flight Risk.**

If convicted of the charged offense, Tavake's sentencing guidelines would be life. Further, 18 U.S.C. § 848(e)(1)(A) carries a mandatory minimum sentence of 20 years. Considering the potential life sentence Tavake is facing he has every incentive to flee.

On March 22, 2024, FBI agents executed a search warrant at Tavake's residence and located a passport for Tavake that was issued from the kingdom of Tonga The passport was issued in June of 2023 and is valid through June of 2028. Tavake is a both a Tongan and United States citizen. See ECF 6 (Pretrial Services Bail Report) at page 4. Further, Tavake's father owns land in Tonga that Tavake will inherit. See ECF 6 (Pretrial Services Bail Report) at page 5. During the execution of the search warrant, agents also observed a bench warrant that was issued for Tavake from the Superior Court in San Mateo County for Tavake's failure to appear at a court hearing on August 15, 2023, for charges of driving on a suspended license. In 2023 four failure to appear bench warrants were issued for Tavake CF 6 at pages 7-8

Tavake makes significant proceeds from his drug distribution activity and deals primarily in cash. Investigators have been unable to identify any legitimate employment for Tavake and in fact Tavake reported that he had no consistent income See ECF 6 (Pretrial Bail Report) at page 5. However, Western Union transactions records show that, from November 20, 2020 to February 2, 2022, Tavake sent approximately $59,300.00, via 63 separate Western Union transactions, from Hawaii to primarily Western Union locations in San Mateo, California and Redwood City, California. Between January 10, 2021 and March 19, 2021, Tavake sent approximately $16,370 in 16 Western Union transactions from Hawaii to California. Continental Exchange Solutions records show that, from November 5, 2020, to March 27, 2021, Tavake sent approximately $19,680, via eleven separate Continental Exchange Solutions transactions, from Hawaii to primarily locations in California and Utah. Because Tavake uses mostly cash, it is difficult to track the extent of his resources but the Western Union and Contenential records demonstrate that Tavake has access to large sums of money obtained from narcotics distribution.

Based on the totality of these circumstances, Tavake's appearance at future court appearances cannot be reasonably assured by conditions of release.

**D.    The government concurs with the recommendation from Pretrial Services that Tavake should be detained pending trial**

UNITED STATES' DETENTION MEMO              7
3:24-MJ-70463

<u>The government strongly agrees with Pretrial services that the Tavake poses a danger to the community which cannot reasonably be mitigated by a combination of conditions.</u> Additionally, the defendant's wife that the defendant was with at the time of this arrest, would not be an appropriate third-party custodian. As discussed above, investigators learned that Tavake dealt almost exclusively in cash earned from his methamphetamine distribution. According to Western Union records, on or about June 23, 2021, from Hawaii, Tavake sent his wife $1000 and or about April 1, 2022, from Hawaii, Tavake sent his wife $1500. According to Continental Exchange Solutions records, on or about July 8, 2021, from Hawaii, Tavake sent his wife $2000 and on or about November 17, 2021, from Hawaii, Tavake sent his wife $1000. Tavake's wife acknowledged that the defendant did not have a regular income. See ECF 6 (Pretrial Bail Report) at page 5. Accordingly, it is likely that Tavake's wife was aware of and receiving proceeds from Tavake's drug distribution activities.

Ultimately, no third-party custodian, regardless of whom that may be, or any other condition can assure the safety of the community or the appearance of Tavake at trial. Certainly a bond consisting of a property that does not belong to Tavake is insufficient to assure the safety of the community or the appearance of Tavake at trial. See ECF (Pretrial Services Bail Report) at pages 2-3. Accordingly, the government requests that the Court follow the recommendation of Pretrial Services and order that Tavake be detained pending trial.

//
//
//
//
//
//
//

UNITED STATES' DETENTION MEMO            8
3:24-MJ-70463

### IV. CONCLUSION

Tavake cannot overcome the presumption that there are no conditions that will reasonably ensure the safety of the community or assure his appearance at court proceedings, therefore he should be detained pending trial and sent to the District of Hawaii.

DATED: March 28, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

/s/ Maya Karwande
MAYA KARWANDE
Assistant United States Attorney